**SO ORDERED.**

**SIGNED this 1 day of October, 2020.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# GREENVILLE DIVISION

**In re:**
**K & J FARMS, LLC,**                         CASE NO.: 20-01239-5-JNC
      **DEBTOR**                              CHAPTER 12

## ORDER DENYING CONFIRMATION OF AMENDED PLAN

The matter before the court is the Second Amended Chapter 12 Plan of Reorganization of K&J Farms, LLC ("K&J" or the "Debtor") filed August 25, 2020 (Dkt. 106; the "Amended Plan"). Prior plan versions were filed June 16, 2020 (Dkt. 71) and August 13, 2020 (Dkt. 98). Plan objections were filed by Rabo AgriFinance LLC ("Rabo") on July 22, 2020 (Dkt. 87); the United States Department of Agriculture, Farm Service Agency ("FSA") on July 24, 2020 (Dkt. 89) and March 30, 2020 (Dkt. 40); and CNH Industrial Capital America, LLC ("CNH") on July 23, 2020 (Dkt. 88). In addition, CNH filed a Motion for Relief from Automatic Stay with respect to its collateral consisting primarily of specified farm equipment on June 16, 2020 (Dkt. 72). The CNH motion was opposed by the Debtor (Dkt. 78) and was scheduled for hearing contemporaneously with the Amended Plan. Hearings on plan confirmation were held on August 26 and September 9, 2020, in Greenville, North Carolina. Present in person or by telephone were David E. Mills as attorney for the Debtor; Caren D. Enloe as attorney for CNH; Neal I. Fowler, Assistant United States Attorney, for FSA; and James S. Livermon, III, as attorney for Rabo.

1

At the September 9 hearing, counsel for K&J and CNH announced a resolution of the Motion for Relief from Automatic Stay by consent terms in the final plan order. Also, Rabo's objections were largely resolved by a combination of the amendments pertaining to it in the Amended Plan; determinations made in orders issued by the court in the related chapter 12 case of Kenneth Roberson, Sr. and Vickie Roberson, case no. 18-05432-5-JNC; and preliminary rulings on further changes declared necessary for plan confirmation at the September 9 hearing, including the timing and amount of farmland rent assigned and due to Rabo from K&J. FSA's objections raised issues of law that were not decided at the hearing, which matters were taken under advisement at its conclusion. This order addresses the remaining FSA objections.

## BACKGROUND

K&J is a North Carolina limited liability company that has farmed between 2000 and 2500 acres of farmland scattered throughout Edgecombe, Martin, Pitt and Beaufort Counties, North Carolina, for the past forty years in its present or predecessor forms. K&J currently raises and harvests cotton, corn, soybeans, wheat, and sweet potatoes. Its material source of income is revenue derived from the growing of sweet potatoes on consignment, the sale of harvested crops, and collection of federal farm program payments. As with other farmers across the country, K&J is heavily dependent on payments received from the alphabet soup of farm subsidy programs.

Largely as a result of damages to crops caused by adverse weather events (such as Hurricane Matthew in 2016) and low commodity prices, K&J filed a voluntary chapter 11 petition on March 28, 2017, before this court in case number 17-01480-5-JNC (the "Chapter 11 Case"). Its chapter 11 plan of reorganization was confirmed on April 20, 2018 and modified on May 8, 2019 (17-01480-5-JNC, Dkt. 288 and Dkt. 350; the "Chapter 11 Plan"). Payments under the Chapter 11 Plan commenced. The principal balance on FSA's secured claim was reduced from about

$620,000 when the Chapter 11 Case was filed to about $455,000 by the time of dismissal. However, subsequent droughts and storms (primarily Hurricane Florence in September 2018) hit Eastern North Carolina hard, again resulting in severe damage to crops at harvest time. Coupled with other issues outside of its control, such as drastically falling commodity prices triggered by trade tariff wars, K&J was unable to meet all of its 2019 payment obligations under the Chapter 11 Plan. The Chapter 11 Case was dismissed by order dated March 16, 2020 (17-01480-5-JNC, Dkt. 387).

Before the ink was dry on that order, K&J returned to the bankruptcy court stage on March 19, 2020, but in chapter 12 rather than chapter 11. Unlike in 2017 when it filed chapter 11, in 2020 K&J qualified as a "family farmer" as that term is defined by Section 101(16) of the Bankruptcy Code. As of the chapter 12 petition filing date, K&J's aggregate debts totaled less than the $10,000,000 eligibility limitation (increased from $2,044,225) contained in the Family Farmer Relief Act of 2019, Pub. L. 116-51, 133 Stat. 1075 (August 23, 2019).

Rabo and FSA opposed an Emergency Motion to Obtain Post Petition Financing under Section 364 of the Bankruptcy Code filed by K&J in its new case on March 21, 2020 (Dkt. 11; the "Financing Motion"). The Financing Motion was approved over those objections by order dated April 2, 2020 (Dkt. 44; the "Financing Order"). Pursuant thereto, K&J was provided a farming line of credit by Ag Resource Management/Agrifund, LLC ("ARM") and Nutrien Ag Solutions, Inc. ("Nutrien") for a crop year 2020 financing commitment amount totaling $1,190,151.

Without the ARM and Nutrien loan, K&J would not have been able to conduct farming operations in chapter 12. Key to obtaining the ARM and Nutrien loan was a limited subordination of FSA's setoff ability against K&J payment rights in four federal farm programs identified as the Wildfire and Hurricane Indemnity Program ("WHIP"), Agriculture Risk Coverage ("ARC"), Price

3

Loss Coverage ("PLC"), and Market Facilitation Program ("MFP") (collectively, the "Farm Program Payments"). In the Financing Order, ARM and Nutrien were granted a senior priming lien ahead of FSA's liens and setoff rights in the Farm Program Payments limited to $34,500. As replacement collateral, FSA received first liens against a 2005 Chevrolet Silverado Duramax farm truck, a GVM Transpread 5.5-ton fertilizer spreader, and a MacDon 974 Flex Drapper 36' head. The combined value of those assets equaled or exceeded the $34,500 priming amount, thereby permitting the limited subordination of FSA's rights pursuant to 11 U.S.C. § 364(c) and (d).

## THE AMENDED PLAN

In the Amended Plan, K&J places FSA in Class 4 and asserts that the balance of the FSA claim was $455,442.19 as of the chapter 12 case petition date. It proposes to repay the FSA claim amortized over ten (10) years with interest at 4.0% in annual installments of $56,307.40 beginning March 1, 2021. Further, so long as K&J remains current on its plan obligations, FSA would retain its lien on and setoff rights against the Farm Program Payments each year, but only to the extent of the $56,307.40 annual payment; K&J would be entitled to retain Farm Program Payments in excess of that $56,307.40. No replacement collateral was offered. Effectively, the FSA lien would be stripped as to the excess because once the excess funds were spent by K&J, FSA would never be able to recover on that excess amount.

FSA objected to the Amended Plan, asserting that it could not be stripped of its setoff rights under Section 553 of the Bankruptcy Code without its consent or provision of replacement collateral. FSA also objected to the Debtor's good faith in filing the chapter 12 plan and petition in this case, and the feasibility of the Amended Plan under 11 U.S.C. § 1225(a)(6), based on the Debtor's struggles in the prior Chapter 11 Case. The good faith objection was overruled at the time of the Financing Motion and is overruled here again. As to feasibility, K&J carried its burden on that

issue at the Amended Plan hearing, and FSA offered insufficient evidence in opposition.[1] However, the issue of the Debtor's ability to cramdown the Amended Plan over the FSA objection based on preservation of its secured creditor setoff rights raises issues of law that are addressed here.

## JURISDICTION

The court has complete jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 133. The matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). It has authority to hear this matter under the August 3, 1984 General Order of Reference entered by the United States District Court for the Eastern District of North Carolina.

## DISCUSSION

In the face of an objection by a secured creditor to plan confirmation, Section 1225(a)(5)(B) of the Bankruptcy Code sets out the minimum requirements necessary for a debtor to overcome that objection.[2] Cramdown in the face of objection can only be accomplished if (i) the creditor retains its lien and (ii) the value the creditor will receive under the plan is at least equal to the value of the collateral as of the effective date of the plan. 11 U.S.C. § 1225(a)(5)(B).

Here, the value of FSA's collateral is unknown because the Farm Program Payments consist of future intangible payment rights that vary from year to year depending on several factors, including whether Congress will fund or sunset various programs; future farm commodity prices; and the effect of weather for crop insurance claims. New programs come and go, such as the one-off farm specialty provisions contained in the CARES Act (Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136 [HR 748], 134 Stat. 281 (signed into law Mar. 27, 2020) (the "CARES Act"),

---

[1] The FSA objection on good faith was a mere repeat of its objection to the Financing Motion. FSA presented no new evidence at the Amended Plan hearings in support of its good faith argument. The same is true of feasibility, but if a new plan is offered as a result of this order, feasibility objections can be renewed.

[2] Defeating a secured creditor's plan objection and obtaining confirmation forcing claim treatment is commonly referred to as "cramdown" in bankruptcy parlance.

which may or may not generate funds for K&J related to the 2020 crop year.[3] Although the FSA claim has been reduced by about $50,000 per year since K&J's ride through the Bankruptcy Code began in 2017, because the total Farm Program Payments are unknown until the end of each year, FSA is unwilling to surrender any portion of its future offset rights.[4]

On the other hand, FSA's position assumes that it has a right of setoff in the first place. Section 553(a) of the Bankruptcy Code states that "this title does not affect[s] any right of a creditor to offset a mutual debt owing by such creditor to the debtor." 11 U.S.C. § 553(a). Setoff rights are not established in the Bankruptcy Code and must originate from a body of law outside of it. *See Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995).

Four elements are required for FSA to assert setoff rights on the Farm Program Payments:

> "1. A debt exists from the Government to the Debtors and that debt arose prior to the commencement of the bankruptcy case;
> 2. The Government has a claim against the Debtors which arose prior to the commencement of the bankruptcy case;
> 3. The debt and the claim are mutual obligations; and
> 4. That the Government would have the right to offset the debt under non-bankruptcy law."

*In re Krause*, 261 B.R. 218, 222 (BAP 6th Cir. 2001).

K&J conceded these four points were met for hearing purposes as to existing farm programs, acknowledging that the FSA debt and claim arose prior to the filing of this chapter 12 case, are mutual obligations, and that FSA previously exercised its non-bankruptcy law setoff rights during the prior chapter 11 case.[5] However, K&J argues that by obligating repayment of the FSA claim in annual $56,307.40 installments in the Amended Plan, FSA is receiving "not less

---

[3] FSA acknowledges that it does not have offset rights in new programs implemented or created on or after March 19, 2020. Any rights to funding under the CARES Act would not inure to the benefit of FSA's set off rights and would be retained by K&J free and clear of the FSA secured claim.

[4] From 2016 to 2018, the relevant Farm Program Payments to K&J paid on FSA's claim has averaged $66,249 per year. However, future Farm Program Payments rights (including 2020) are incapable of accurate prediction.

[5] Similarly, FSA conceded that it would not hold setoff rights against new farm programs coming into existence after the K&J chapter 12 petition filing, such as the potential payment rights under the CARES Act.

than the allowed amount of such claim," which K&J contends constitutes protection of the claim and repayment rights sufficient to protect FSA.

In effect, K&J attempts to create an exception to § 553 and state or federal law setoff rights by substituting "adequate protection" of the secured claim under 11 U.S.C. § 1205. Unlike adequate protection in chapter 11 cases, § 1205 adequate protection "makes clear that what needs to be protected is the value of the property, not the value of the creditor's 'interest' in the property." *See In re Rennich*, 70 B.R. 69, 72 (Bankr. D.S.D. 1987). The proposed Amended Plan treatment would likely satisfy § 1205 on the FSA claim, but unfortunately for K&J, § 1205 adequate protection is not the single litmus test for approval of chapter 12 plans. Chapter 12 plan cramdown confirmations are instead governed by 11 U.S.C. § 1225(a)(5)(B) and its *two* mandatory parts, (i) and (ii). The Amended Plan's offer of a level annual payment does not satisfy subsection (i), which states, "[T]he plan provides that the holder of such claim retain the lien securing such claim…." FSA holds a setoff lien on the Farm Program Payments for 2020 and following years, and the Amended Plan cannot take away that right without consent or replacement collateral. Otherwise, FSA would not "retain the lien securing such claim."

On the other hand, unlike the K&J Chapter 11 Case where setoff was permitted by agreement and order, in this successor chapter 12 case, FSA cannot currently setoff the crop year 2020 Farm Program Payments and apply the proceeds to its claim unilaterally. Section 362(a)(7) of the Bankruptcy Code states that the automatic stay applies to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor…." FSA has made no showing that any of the subject funds arose postpetition, nor that relief from the automatic stay would not otherwise be required. Also, FSA has made no showing on the status of the replacement lien collateral under the Financing Motion.

## CONCLUSION

The parties appear to be at a § 362 versus § 1225 standoff, at least for now. Other creditor plan objections have been addressed, and evidence on feasibility through the date of the last hearing has been taken. While a final decision on feasibility is reserved since the plan must be amended, the good faith objections asserted by Rabo and FSA at the hearing based on a repeat bankruptcy petition filing and K&J's lack of profitability while in chapter 11 are overruled. Confirmation of the Amended Plan is nevertheless DENIED for failure to comply with 11 U.S.C. § 1225(a)(5)(B) as to the FSA claim (or obtain its consent).  K&J is directed to file a further amended plan or seek other relief within thirty (30) days of the date of this order.

**END OF DOCUMENT**